IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:23-CV-486-RJ

CHRISTOPHER BLAKE,

    Plaintiff/Claimant,

v.

MARTIN O'MALLEY,
*Commissioner of Social Security*,

    Defendant.

ORDER

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-12, -15]. Claimant Christopher Blake ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the matter is ripe for adjudication. Having carefully reviewed the administrative record and the briefs submitted by the parties, the court orders the case remanded to the Commissioner for further proceedings consistent with this Order.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on July 14, 2021, alleging disability beginning May 14, 2021. (R. 10, 179–88). His claim was denied initially and upon reconsideration. (R. 51–66). A telephonic hearing before an Administrative Law Judge ("ALJ") was held on February 13, 2023, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 33–50). On April 5, 2023, the ALJ

issued a decision denying Claimant's request for benefits. (R. 7–25). After the Appeals Council denied Claimant's request for review, (R. 1–6), he then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520, under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the alleged onset date. (R. 12). Next, the ALJ determined

3

Claimant had the severe impairments of degenerative disc disease and migraine headaches. *Id.* At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 12–13). Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding that he had the ability to perform light work[1] with the following restrictions:

> The claimant can frequently push and pull with the right lower extremity; frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; and frequently stoop, kneel, crouch, and crawl.

(R. 13–19). In making this assessment, the ALJ found that Claimant's statements about his limitations were not entirely consistent with the medical evidence and other evidence in the record. (R. 14). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as an industrial truck operator and building maintenance repairer. (R. 19). At step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that he can perform. (R. 19–20).

## V. DISCUSSION

Claimant argues that the ALJ erred by (1) failing to perform a function-by-function analysis of Claimant's contested and relevant ability to walk and stand when assessing his residual functional capacity ("RFC") and (2) failing to provide persuasive and relevant reasons for rejecting the medical opinion of Claimant's treating orthopedic spine specialist, Dr. Nicole

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

Bullock. Pl.'s Br. [DE-12] at 7–15. The Commissioner contends that substantial evidence supports the ALJ's evaluation of Claimant's subjective complaints and Dr. Bullock's medical opinion. Def.'s Br. [DE-15] at 6–15.

## A. The Function-by-Function Analysis and Claimant's Subjective Statements

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting SSR 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

In the instant case, the ALJ found that Claimant can perform light work with various exertional limitations. (R. 13–19). However, Claimant contends that the RFC and the ALJ's assessment of it are inadequate because the ALJ did not address Claimant's contested and relevant ability to walk and stand for a prolonged period of time. Pl.'s Br. [DE-12] at 7–13. Claimant posits that this oversight occurred because the ALJ applied the wrong legal standard to establish the degree of pain caused by Claimant's degenerative disc disease, violating both *Oakes v. Kijakazi*, 70 F.4th 207, 215 (4th Cir. 2023) and *Brown v. Comm'r of the Soc. Sec. Admin.*, 873 F.3d 251 (4th Cir. 2017) in the process. *Id.* Specifically, Claimant argues that the ALJ violated *Oakes* by "reason[ing] that [Claimant's] testimony regarding his limited ability to engage in

5

activities was not supported by his examinations being 'unremarkable for any gait or strength deficits,'" thus improperly disregarding the fact that pain itself can be disabling even in the absence of objective indicators of impaired functionality. *Id.* at 7–12. Claimant contends that the ALJ violated *Brown* by describing Claimant's post-injection and physical therapy pain relief as "substantial" and "significant" without acknowledging other record evidence indicating that this relief was only partial and temporary. *Id.* at 12–13.

The undersigned agrees with Claimant. Although the Fourth Circuit has held that remand is not required when the ALJ's RFC analysis fails to explicitly discuss every part of function-by-function analysis, this general rule only applies when the ALJ sufficiently explains her conclusions and uses evidence from the record to explain the RFC finding. *Ladda v. Berryhill*, 749 F. App'x 166, 172 (4th Cir. 2018); *see Mascio*, 780 F.3d at 636–37; *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). Here, without reweighing the evidence, it is clear that is not the case and that the ALJ's decision violates *Oakes* and *Brown*.

At the February 13, 2023 hearing, Claimant testified that he "can stand comfortably but it eventually leads to excruciating pain in the lumbar area." (R. 45). When asked how long he is able to stand, Claimant first explained that it "[d]epend[s] on how much the pain is. Right now, I need to sit down. I'm hurting pretty bad. It makes me feel better sometimes standing up and then it makes me feel better sitting down." *Id.* After a follow-up question from his attorney, Claimant then specified that he could stand for "no more than ten minutes. I'd be pushing it if I did 20 minutes. It would get really bad if I had to stand a long time." *Id.*

Claimant's hearing testimony is corroborated by third-party function reports completed by his mother and ex-fiancé; statements he has consistently made to his medical providers since at least 2020; and radiological evidence. (R. 253, 259, 261, 271, 281–82, 327, 332–66, 370, 373,

6

414, 425, 429, 432, 446–47, 470–79, 483, 496, 504, 544–46, 563–64, 581–89, 670, 864–69). As the ALJ herself acknowledged, Claimant's degenerative disc disease could reasonably be expected to cause the alleged symptoms. (R. 14). However, having made this determination, the ALJ was then obligated to determine whether Claimant's symptoms limit his ability to perform work-related functions, *see Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006), and it is at this point in the analysis that the ALJ's reasoning becomes difficult to trace.

Claimant has an extensive history of chronic neck, thoracic spine, and low back (lumbar) pain dating well before the alleged onset date. (R. 14, 329, 360–444). Medical records from Claimant's treating orthopedists and physical therapist show that since May 14, 2021, he has continuously sought relief from his symptoms through, *inter alia*, physical therapy, oral pain medications, and regular cervical epidural steroid injections and lumbar transforaminal epidural injections. (R. 348–59, 446–68; 480–639). Record evidence also indicates that Claimant's treatment efforts have achieved mixed results. Physical therapy notes from individual visits at times reflect improvements in lumbar pain and range of motion immediately post-treatment, (R. 459–60, 462, 487–91), and at others indicate that physical therapy is merely preventing Claimant's symptoms from getting worse (R. 494, 499) or resulting in slow or "no real progress," (R. 453, 462, 486, 508). Records from Cary Orthopaedics similarly depict blunted highs and pronounced lows.[2]

Instead of addressing the wide breadth of conflicting evidence, the ALJ's report rather confusingly paints a more optimistic picture of the record and emphasizes that by December of

---

[2] For example, on October 15, 2021, Claimant's orthopedist noted that Claimant had reported that his overall pain was worse despite attending physical therapy and using a TENS unit and inversion table daily. (R. 455). The doctor added that Claimant could consider additional injections, "but he has had lots of steroid[s] and injections have only helped a little." *Id.* Claimant then received a Bilateral L4/5 and L5/S1 Medial Branch Block on February 8, 2022 and reported that the injection provided him with 50–60% relief. (R. 483). However, at a follow-up appointment with his orthopedist on March 7, 2022, Claimant continued to report pain in the low back, thoracic spine, bilateral hips, and neck, and described his current pain levels as a 7–8/10. *Id.*

7

2021, Claimant had "made steady progress with physical therapy, as evidenced by his improved lumbar range of motion (Exhibit 4F, p. 51). Moreover, the claimant reported that his lumbar and cervical pain had 'reduced significantly' (Exhibit 4F)." (R. 15). The report fails to add that treatment notes from December 2, 2021 show that despite continued physical therapy and injections, Claimant still reported that "PT helps for several days, then symptoms return." (R. 516).

The ALJ's report also mentions that on December 16, 2021, Claimant's physical therapist noted that Claimant's "[l]umbar and cervical pains ha[d] reduced significantly" over the course of eleven physical therapy appointments. (R. 510–11). Critically, though, the report does not acknowledge that Claimant continued seeking regular physical therapy and medical care related to his lower back pain despite these alleged improvements, (R. 480–508, 531–639), sought to get a nerve ablation in his lumbar spine approved by his insurance company, and continued to report severe pain, decreased mobility, decreased range of motion, and impaired flexibility in his lower back. *Id.* Nor does the report discuss that on September 1, 2022, Claimant's physical therapist adjusted his long-term therapy goals by eight weeks (after multiple previous six-week extensions, *see* R. 549, 598, 624) citing that Claimant's lumbar pain, range of motion, and straight leg raise goals had not been met; Claimant's prognosis was "guarded" because of the "chronicity of condition and severity of symptoms"; Claimant's lumbar flexion and range of motion were limited by his pain and stiffness; Claimant's strength was within normal limits, but there was pain with exertion; and there were several tender points on palpitation throughout Claimant's back, including "much tenderness" in his lumbar region. (R. 531–35). Instead, the ALJ simply summarizes the unfavorable medical evidence by stating that in July 2022, Claimant "said he had been without improvement from physical therapy 'for some time.' He reported

8

exacerbation of his pain with prolonged standing and walking." (R. 16). The ALJ also states that "[d]uring a follow up in August 2022, the claimant ambulated with a non-antalgic gait and he maintained normal strength and sensation in the extremities. However, he continued to have reduced cervical and lumbar range of motion (Exhibit 7F, p. 31)." *Id.*

The ALJ's mischaracterization of the record is error. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (*quoting Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)). To be sure, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec. Admin.*, 769 F.3d 861, 865 (4th Cir. 2014) (*quoting Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). And, of course, the court may not reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *See Mascio*, 780 F.3d at 636. But when the ALJ's decision suggests that she selectively examined the record and ignored countervailing evidence, *Lewis*, 858 F.3d at 869, or that she mischaracterized the facts to buttress her conclusions, *Arakas*, 983 F.3d at 102, that decision is not supported by substantial evidence. Such is the case here, where the ALJ has misrepresented both the extent and impact of Claimant's pain, as well as the effects of treatment. *See Lockerby v. Saul*, No. 1:19-cv-00159-MOC, 2020 WL 506752, at *3 (W.D.N.C. Jan. 30, 2020) ("An accurate and logical bridge must consider both favorable and unfavorable evidence"); *Jerome S. v. Kijakazi*, 2023 WL 5570201, No. AAQ-22-02963, at *4 (D. Md. Aug. 29, 2023) (finding ALJ erred by ignoring evidence regarding the severity of the plaintiff's pain) (citing S.S.R. 16-3p, 2016 WL 1119029, at *8 ("[I]nconsistencies in an individual's statements made at varying times does not necessarily mean they are inaccurate. Symptoms may vary in

9

their intensity, persistence, and functional effects, or may worsen or improve with time."); *Brown*, 873 F.3d at 264 (finding error where, *inter alia*, the ALJ "failed to acknowledge . . . that contemporaneous records also indicated that the injections provided only temporary relief").

The ALJ's error is compounded by her near-total dismissal of Claimant's subjective statements, without adequate explanation. In the Fourth Circuit, claimants may rely exclusively on subjective evidence to prove that their medically determinable impairments limit their ability to perform work-related functions. *Oakes*, 70 F.4th at 215 (citing *Arakas*, 983 F.3d at 95). Because claimants are entitled to "rely exclusively on subjective evidence to prove that [their] symptoms [are] so continuous and/or severe that they prevented [them] from working," an ALJ applies the incorrect legal standard in discrediting complaints "based on [a] lack of objective evidence corroborating them." *Id.* (quoting same at 96).

Here, that is exactly what the ALJ has done. Despite stating at several points in the RFC analysis that she considered Claimant's subjective complaints, the ALJ repeatedly conflates Claimant's ability to function *without pain* to his ability to walk and stand *in general*—when Claimant has never asserted that he is outright unable to perform either function. *Compare* R. 16 ("[D]espite the claimant's complaints of pain that are exacerbated by any activity, his examinations have remained unremarkable for any gait or strength deficits . . . . Moreover, his physical therapy records document improvement in his range of motion over the course of his treatment.") *with* R. 45 ("I can stand comfortably but it eventually leads to excruciating pain in the lumbar area."). This oversight is not only puzzling but violates *Oakes v. Kijakazi*.

Claimant has consistently testified and communicated to his medical providers that he struggles with severe pain in his cervical, thoracic, and lumbar spine, particularly when standing or walking for a prolonged period of time, and that while his cervical spine pain has improved

10

somewhat with treatment, the lumbar pain has persisted and remains debilitating. (R. 253, 259, 261, 367, 370, 373, 414, 425, 429, 432, 348–468, 480–639). Per Fourth Circuit precedent, Claimant is entitled to rely on his subjective statements to support his functionality-related claims, and if the ALJ disregarded these claims—which is not entirely clear—she should have explained why she did so, without cherrypicking the record in the process. *Oakes*, 70 F.4th at 215 ("[T]he ALJ failed to adequately consider the intensity and persistence of [Claimant's] pain. Instead, following a recitation of facts, the ALJ baldly stated that 'the claimant's subjective complaints and alleged limitations were not persuasive.'"). The court cannot now decide Claimant's credibility in the first instance, and therefore, remand is warranted. *See Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013).

The decision to remand the instant case is supported by *Dowling v. Comm'r of the Soc. Sec. Admin*. In *Dowling*, the Fourth Circuit explained that remand is appropriate where the ALJ's decision does not fully analyze relevant and/or contested functions in assessing the claimant's RFC. 986 F.3d 377, 388–89 (4th Cir. 2021). Here, Claimant's ability to walk and stand for a prolonged period of time is undoubtedly relevant. The Medical-Vocational Rules, also referred to as the Medical-Vocational Guidelines or "Grids," are set out in 20 C.F.R. pt. 404, subpt. P, app. 2. This set of rules specifies a conclusion as to whether or not a claimant is disabled. *See generally* Med.-Vocational R. 200.00(a); Soc. Sec. Ruling 83-10, 1983 WL 31251. According to the Grids, an individual closely approaching advanced age (age 50–54) who is a high school graduate or more, is limited to the full range of sedentary work, and has skilled or semi-skilled previous work experience but no transferable skills is disabled. 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 201.14.

In the instant case, the ALJ restricted Claimant's RFC to light work, (R. 13–19), an

11

exertional level that requires a good deal of walking or standing, 20 C.F.R. § 404.1567(b). Claimant turned fifty years old on June 20, 2021, has a high school education, and worked for the City of Raleigh for thirty-two years performing medium to heavy exertion work. Pl.'s Br. [DE-12] at 8; (R. 47–50). As the VE testified at the February 13, 2023 hearing, Claimant possesses no skills which transfer from his prior work experience to the sedentary level of exertion. (R. 48). Thus, if Claimant is unable to stand or walk for a sufficiently long time to perform light work, a finding of "disabled" would be directed by the Grids. 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 201.14. Accordingly, remand is warranted for further consideration of this issue.

## B. Dr. Bullock's Medical Opinion

Claimant argues that the ALJ erred by using "the same improper reasoning to reject [DR. Bullock's] medical opinion as she did to dismiss his testified limitations: that his pain complaints were not supported by objective evidence (motor deficits), despite his record being replete with objective evidence of medical conditions which could reasonably cause his pain." Pl.'s Br. [DE-12] at 15.

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). The applicable regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider the persuasiveness of medical opinions using five factors: (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical

12

finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) "other factors that tend to support or contradict a medical opinion." Id. § 404.1520c(c)(1)–(5). The most important factors are supportability and consistency. Id. § 404.1520c(a).

Here, the medical opinion at issue is dated October 24, 2022, and consists of a completed pre-generated "questionnaire for physician regarding low back pain." (R. 993). In the section labelled "check all that are present on examination or testing," Dr. Bullock indicated that Claimant suffers from neuro-anatomic distribution of pain; limitation of motion of the spine; severe burning or painful dysesthesia; a need to change position more than once every two hours; lumbar spinal stenosis; chronic nonradicular pain and weakness; and an "inability to ambulate effectively, e.g., [an] inability to walk a block at a reasonable pace on [a] rough or uneven surface, [an] inability to walk enough to shop or bank, or [an] inability to climb a few steps at a reasonable pace with the use of a single handrail." *Id.* In the section labelled "circle answers," Dr. Bullock indicated that, in her opinion, Claimant suffers from pain that is moderate to severe; can sit for only fifteen minutes at a time; cannot work for any number of hours per day; can lift ten pounds at most occasionally and no amount of weight frequently; and can never bend or stoop. *Id.*

In evaluating Dr. Bullock's opinion, the ALJ's report states that,

13

> These opinions are not persuasive. These opinions are generally consistent with the claimant's own subjective complaints. However, they are not fully supported by the objective evidence documented throughout the medical evidence of record. For instance, the opinion that the claimant could only sit for 15 minutes at one time is not supported by the repeated findings that the claimant was not found to be in any acute distress, could sit and rise from that position without any noticeable difficulty, and the physical therapy findings that the claimant could sit with correct posture (Exhibits 2F, 3F, 4F, 6F, 7F, and 8F). The opinion that the claimant could occasionally lift up to 10 pounds, but could not frequently lift any amount of weight, is not persuasive, as it is not supported by the repeated findings of normal strength throughout the medical evidence of record (Exhibits 2F, 3F, 4F, 5F, and 7F). The opinion that the claimant could never bend or stoop is not supported by the findings of improved, but still limited, lumbar flexion and extension with physical therapy (Exhibits 2F, 3F, 4F, and 7F). The opinion that the claimant could not perform work for any amount of time is on an issue reserved to the Commissioner and, per the dictates of 20 CFR 404.1520b(c), is deemed inherently neither valuable nor persuasive. As such, the undersigned need not articulate how this evidence was considered in terms of persuasiveness.

(R. 16–17).

As explained *supra*, the ALJ cherrypicked the record and improperly evaluated Claimant's subjective complaints regarding his ability to stand and walk for a prolonged period of time, frustrating meaningful review. § V.A. Thus, while substantial evidence supports the ALJ's conclusion that the opinion Claimant could not perform work for any amount of time is on an issue reserved to the Commissioner, 20 C.F.R. § 404.1520b(c)(3)(i), substantial evidence does not support the ALJ's remaining conclusions, *see* § V.A. The existing errors imply that the ALJ did not consider whether Dr. Bullock's opinion would be consistent with the evidence and supported by treatment notes when viewed in light of the disabling symptoms that Claimant has actually alleged, i.e., that while he is able to perform physical functions like standing and walking, he is unable to sustain such activity due to pain. As a result, it is difficult for the court to evaluate her persuasiveness analysis. On remand, the ALJ should assess the persuasiveness of Dr. Bullock's opinion in the context of a more fully developed record.

14

## VI. CONCLUSION

For the reasons stated above, the case is REMANDED, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this order.

So ordered, the __19__ day of August 2024.

_____
Robert B. Jones, Jr.
United States Magistrate Judge

15

Case 5:23-cv-00486-RJ    Document 16    Filed 08/20/24    Page 15 of 15